James L. EDRINGTON *v.* Barbara Edrington
FITZGERALD

74-95                                    514 S.W. 2d 712

Opinion delivered September 30, 1974

*Tom Forest Lovett & Griffin Smith,* for appellant.

*Marvin H. Robertson,* for appellee.

J. FRED JONES, Justice. This is an appeal by James L. Edrington from a chancery court decree denying his habeas corpus petition for the custodial possession of two minor children from his former wife and mother of the children, Barbara Edrington Fitzgerald. In 1962 Edrington obtained a divorce from the appellee in Jefferson County Kentucky while he was stationed in that state as a member of the Armed Forces. The custody of the two children, a boy then one year of age and a girl then seven months of age, was awarded to him by consent in the divorce decree.

Edrington was transferred to the state of Maryland in January, 1967, and since his retirement from the Armed Forces in 1972, he has resided in the state of Indiana. The children have lived with him in Maryland and Indiana except for visitation periods with their mother. The appellee mother married Fitzgerald in 1968 and has lived in the state of Arkansas since her remarriage. None of the parties have resided in Kentucky since 1967. The battle over the custody of the children in this case has been a continuous one extending through the courts of Kentucky, Maryland, Indiana and Arkansas and over a period of twelve years, the entire life of the children. Of course the children are the primary casualties.

The original divorce decree and many of the numerous subsequent court orders are not in the record before us but the history of the litigation is set out in a detailed "Findings of Fact and Conclusions of Law" filed on July 24, 1969, by

the Jefferson Circuit Court in Kentucky denying one of Mrs. Fitzgerald's petitions for change in custody. The pertinent portions of this ten page document are as follows:

"This action came before the Court following the filing of an amended and supplemental complaint by the defendant seeking change of custody of the two infant children of the parties.

On December 14, 1962, a judgment of divorce was entered incorporating an agreement awarding the plaintiff the custody of the two children, who are now seven and eight years of age respectively, and awarding the defendant the right of reasonable visitation.

Following several abortive efforts by the defendant to secure custody of the children an agreement was entered on June 1, 1965, ordering temporary custody to the defendant from June 1, 1965, to September 1, 1965. On November 5, 1965, another amended and supplemental counterclaim was filed by the defendant praying for the permanent custody of the children. The Court entered its findings of fact and conclusions of law on May 6, 1966, retaining custody with the plaintiff and awarding custody during the summer months to the defendant with support to be paid her at that time at the rate of $120 per month.

Sergeant Edrington, plaintiff in this action, a member of the United States Army Air Force, was transferred to the Andrews Air Force Base in December, 1966, and reported there on January 19, 1967. He has been living there since that time with his present wife whom he married on October 15, 1964, in Florida, and his two children by his first marriage, the subject matter of this action, and her child by a previous marriage and the child born of his present union.

\*   \*   \*

In the year 1968 the defendant had moved to Maryland and lived within five miles of the residence of the plaintiff. \* \* \* [F]riction arose which resulted in the employ-

ment of attorneys in Maryland by both of them. As a result, the defendant filed in the Maryland Court a petition for modification of visitation rights requesting that she be given Christmas visits. An order was entered on December 23, 1968, by the Prince George Circuit Court granting the plaintiff in this action custody of the minor children during the period of one week prior to the beginning of school in the fall until one week after the ending of school in the summer, granting Mrs. Fitzgerald custody for one week after closing of school in the summer until one week prior to the starting of school in the fall. Other provisions were made in the order, the principal of which was that the mother should have the right of visitation with the children commencing Christmas of 1968 and every even numbered year thereafter from December 26 until the evening prior to the resumption of school and commencing Christmas of 1969 and every odd year thereafter from the first day of the Christmas school vacation until December 26.

\* \* \*

Acting pursuant to this order the defendant took the children to Arkansas. She did not return them on the date specified in the Maryland order. The plaintiff was compelled to go to Arkansas to seek relief there. He received an order of the Arkansas Court following a hearing directing the defendant to turn the children over to him forthwith. This order was dated January 26, 1969. The following day the defendant removed the children to Atlanta, Georgia. She then spent about two weeks with them there and then came to Kentucky to this Court to file her amended and supplemental complaint. The children were finally delivered over to the plaintiff on February 14, 1969. . . .

An order was entered by the Prince George Circuit Court on January 28, 1968, holding Mrs. Fitzgerald in contempt of that Court for failure to comply with the order of December 23, 1968. The order further provided that Mrs. Fitzgerald's rights of custody, visitation privileges, and support payments referred to in said order were held suspended until further orders of that

Court.

\* \* \*

The conduct of the defendant seems to this Court to be one of self-help in taking the law into her own hands. She deliberately disobeyed the orders of the Maryland Court and the Arkansas court. She and her present husband are not persons of limited means nor are they unversed in the field of domestic relations law. They were represented by lawyers in Maryland. They were represented by a lawyer in Louisville. They had counsel in Arkansas. The conduct of the defendant appears to this Court to be not only contemptuous of two other Circuit Courts of this nation but indicative of a campaign of harassment which is made possible by the financial resources of her new husband.

\* \* \*

These children need more than anything a firm fixed base and periods of visitation with their secondary custodian which will not basically disturb their relationships with their primary custodians. The motion for a change in custody is overruled.

\* \* \*

It is believed to be appropriate at this time to comment upon the jurisdiction of this Court and on the Doctrine of Forum Non Conveniens. This Court, of course, has jurisdiction under the continuing jurisdiction rule. See *Batchelor* v. *Fulcher,* 415 S.W. 2d 828 (Ky., 1967). As pointed out in that case, there are three concurrent bases of jurisdiction in cases of child custody. They are: domicile of the child in the state, presence of the child in the state; and personal jurisdiction over the contending parties. In this case the only real contact that this Court has with the parties arises out of the previous proceedings in this Court and neither one of them lives in Kentucky nor do the children.

In the case of *Walden* vs. *Johnson,* 417 S.W. 2d 220 (Ky.,

1967) at Page 223 it was pointed out that the right to control infants should be exercised only when a state has acquired a recognizable parens patriae interest in the child predicated upon bona fide residence or domicile. The domicile of the Edrington children and their residence is in Maryland. The Maryland Court has every advantage over this Court in being able to enlist the help of neighbors, doctors, teachers and other persons who are familiar with the living conditions of the Edrington children in making any further determinations of what is best for them. These observations are made purely for the purpose of obviating future litigation in this Court subject to the condition that the Maryland Court will hold that it does have jurisdiction over the subject matter notwithstanding the presence of the plaintiff on a military base in that state, it being the understanding of this Court that the matter has been raised in the Maryland Court by Mrs. Fitzgerald and will be adjudicated by that Court.''

Mrs. Fitzgerald appealed this decision to the Kentucky Court of Appeals[1] and that court in affirming the trial court, among other things, said:

"Appellant's next point questions the propriety of that part of the judgment relating to future jurisdiction of this controversy. While the judgment does not mention this question, it adopts the findings of fact and conclusions of law which suggest that the Maryland courts should logically have jurisdiction. In dealing with this question the chancellor said: 'These observations are made purely for the purpose of obviating future litigation in this Court subject to the condition that the Maryland Court will hold that it does have jurisdiction over the subject matter * * * .' It was unnecessary that the chancellor embody this language in his findings, although it may have been a gratuitious and beneficial 'observation.' Of course, this part of the judgment is not binding on any court of the Commonwealth in the future for the simple reason that we cannot foretell future circumstances and conditions that may determine the question of jurisdiction."

---

[1] *Edrington* v. *Edrington*, 459 S.W. 2d 141.

It appears that Mrs. Fitzgerald continued to file petitions or motions for change in custody and visitation rights in the Jefferson Circuit Court while she was a resident of Arkansas and Mr. Edrington and the children resided in Indiana. On December 20, 1973, the Kentucky Court entered an order reciting that Edrington and his Indiana counsel had been notified of the hearing by registered letter delivered on December 16. The order recited that Mrs. Fitzgerald resides in Arkansas; that she had driven 600 to 800 miles to Kentucky for the hearing on her motion and if the motion should be granted, she would have to drive to Indiana for the children before returning with them to her home in Arkansas. The court then, by order signed by The Honorable Richard A. Revell, Judge, recited as follows:

"The respondent, Barbara Fitzgerald (formerly Edrington) may have the two infant children, James L., Jr. and Marcelle, with her for visitation purposes from December 20, 1973, until January 7, 1974, or such time as school reconvenes, if earlier, and for such purposes may take said children with her out of the State of Indiana to her home in Arkansas. The respondent shall be responsible to see that said children are returned to their father, the petitioner, on the day before school begins."

On December 21 Mrs. Fitzgerald filed the Kentucky Court order in the Washington County Indiana Circuit Court and on short notice to James Edrington's Indiana attorney, obtained an order of the Indiana Court giving full faith and credit to the Kentucky Court order and obtained an order from the Indiana Court for the delivery of the possession of the children to her. The order provided in part as follows:

"That the Sheriff of Washington County forthwith pick up the children, James L. Edrington, Jr. and Marcelle Sabrina Edrington, and deliver them to the possession of Barbara M. Fitzgerald for visitation in accordance with the Judgment of the Jefferson Circuit Court.

This judgment may be executed immediately."

The possession of the children was delivered to Mrs.

Fitzgerald under this order and she returned with them to her home in Arkansas.

Instead of returning the children to Mr. Edrington in Indiana on January 7, as directed and ordered by both the Kentucky and Indiana Courts, Mrs. Fitzgerald on January 7, 1974, again filed a motion in the Jefferson Circuit Court for a change in custody. On January 28, 1974, the Jefferson Circuit Court entered an order which, among other things, extended the visitation period to March 11, 1974, when the motion for change in custody would be heard and ordered Mr. Edrington to reimburse Mrs. Fitzgerald certain expenses in traveling from her home in Arkansas to the Kentucky Court hearing.

On January 17, 1974, in connection with Mrs. Fitzgerald's petition for possession of the children under the Kentucky Court order, the Washington Circuit Court in Indiana made the following "Entry:"

"It is therefore ORDERED, ADJUDGED AND DECREED as follows:

1.   That the Defendant James Edrington has been in compliance with all prior orders of the Circuit Court of Jefferson County, Kentucky, and the Circuit Court of Prince George's County, Maryland, in bringing the parties' minor children into the State of Indiana.

2.   That the Defendant James Edrington and the parties' minor children are residents and domiciliaries of the State of Indiana.

3.   That the Washington Circuit Court has jurisdiction of the Defendant and the parties' minor children, by virtue of their residence and domicile.

4.   That the Washington Circuit Court does now accept jurisdiction of this cause and all matters pertaining to the present and future custody of the parties' minor children.

5.   That the Plaintiff's, Barbara M. Fitzgerald's, peti-

tion shall be denied.

6.   That the order of this Court heretofore entered on the 21st day of December, 1973, granting full faith and credit to the Kentucky judgment is in error and is hereby set aside and declared null and void.

7.   That the parties' minor children have not been returned to the Defendant James Edrington, as promised to the Washington Circuit Court by Plaintiff's counsel, and that the children shall now be immediately returned to the Defendant's custody.

8.   That the parties' minor children are being illegally detained in the State of Arkansas or the State of Kentucky and that said children shall be immediately returned to the Defendant."

Edrington filed his petition for habeas corpus in the Lonoke County Chancery Court. A hearing was had thereon on February 14, 1974, and on February 21 the chancellor entered a decree denying the petition. Apparently the chancellor felt that the Kentucky rather than the Indiana Court had jurisdiction in this case, and the Kentucky Court order rather than the Indiana Court order was entitled to full faith and credit in this case.

On trial de novo we are of the opinion the chancellor should have granted the petition for habeas corpus. Even if this were truly a conflict of laws case requiring a determination of whether full faith and credit must be given to a foreign court order or decree, we have held contrary to Mrs. Fitzgerald's interest in this case.

In the case of *Keneipp* v. *Phillips*, 210 Ark. 264, 196 S.W. 2d 220, Mrs. Phillips was divorced from her former husband in Indiana in 1944 and the custody of a child was awarded to her. After her marriage to Mr. Phillips she became domiciled in Fayetteville, Arkansas, and in August, 1945, she brought the child to Arkansas where he lived with her and his stepfather. On September 11, 1945, the child's father in Indiana applied to the Indiana Court that had rendered the divorce decree for a modification of the decree for custody of the child

and, on September 26, 1945, an order was entered by the Indiana Court modifying its former decree as to custody and awarding the custody of the child to his aunt, Mrs. O. M. Dennison, as requested by the father. There was no personal service on Mrs. Phillips in Indiana in connection with the modification order. On November 14, 1945, the appellants, father and aunt of the child, filed suit as plaintiffs in the Washington Chancery Court of Arkansas to have the custody of the child awarded to the aunt as was decreed by the Indiana Court. The Washington Chancery Court denied the petition and in affirming the decree on appeal to this court we said:

> "As to the effect to be given the modified decree, *supra,* procured by appellant, husband, while his son and former wife were residents of Fayetteville, Arkansas, the general rule, as well as that declared here by this court, is that it has no extraterritorial effect beyond the boundaries of Indiana where it was rendered, and that when the domicile of a child is changed and it becomes a citizen of another state, as in the present case, such child is no longer subject to the control of the courts of the first state. In the *Tucker* v. *Turner* case, *supra,* this court announced the rule, continuing the quotation from § 417 Ruling Case Law, *supra*: 'Nor is a decree of a court of one state awarding the custody of a child binding upon the courts of another state under the full faith and credit clause of the federal constitution after the child had become domiciled in the latter state. Such a decree as to a child has no extraterritorial effect beyond the boundaries of the state where it is rendered, and the courts of the second state will not remand the child to the jurisdiction of another state, especially where it is against the true interest of the child. The reason for this rule is found in the fact that children are the wards of the court and the right of the state rises superior to that of the parents. Therefore, when a child changes his domicile and becomes a citizen of a second state, he is no longer subject to the control of the courts of the first state.' "

The Kentucky Circuit Court recognized as far back as July, 1969, that all the parties including the children had

become nonresidents of the state and that court's only jurisdiction at that time was based on the original divorce proceeding more than eleven years ago. It is true that the Kentucky trial Court went further than was necessary to the issues before it in reciting the three concurrent bases for jurisdiction in cases of child custody as set out in *Batchelor* v. *Fulcher*, 415 S.W. 2d 828, but that court concluded that the courts in the state of the children's domicile were best suited and equipped to determine their custody on changed conditions, and we reach the same conclusion.

It is conceded by all parties concerned that the bona fide domicile of Mr. Edrington is in Indiana and that of Mrs. Fitzgerald is in Arkansas where they have lived for some time. It is also obvious that Mr. Edrington has the legal custody of the children and they have lived with him in Maryland and Indiana at all times except while visiting Mrs. Fitzgerald in Arkansas under temporary court orders of Maryland and Indiana where Mr. Edrington and the children were domiciled.

The length of this opinion is occasioned by the fact that Mrs. Fitzgerald is domiciled in this state and the custody of the children will be subject to judicial review for some time before they reach their majority. It is thought that perhaps this opinion may be of some value as a guide in avoiding quick orders on short notice and possible future litigation in this case. The decree of the chancellor is reversed and this cause is remanded with directions to grant the petition for habeas corpus, together with the necessary orders for enforcing same.

Reversed and remanded.

BROWN, J., concurs.