CHEMICAL METHODS LEASCO, INC. *v.*
Judith ELLISON & Jessie Rowe

CA 93-492                                              879 S.W.2d 467

Court of Appeals of Arkansas
En Banc
Opinion delivered July 6, 1994

*Josh E. McHughes*, for appellant.

*Michael J. King*, for appellee.

JUDITH ROGERS, Judge. The appellant, Chemical Methods Leasco, Inc., appeals the dismissal of its petition to register a foreign judgment. Appellant, a California corporation, obtained a default judgment[1] against appellees, Judith Ellison and Jessie Rowe, residents of Arkansas, in the Municipal Court of West Orange County, California. Appellant thereafter sought registration of the judgment in the Garland County Circuit Court. Appellees objected to registration on the ground that the California Court lacked personal jurisdiction over them. After a hearing, the trial court agreed with appellees' position, and dismissed the petition. This appeal followed.

On appeal, appellant contends that the trial court erred in not affording the California judgment full faith and credit. We disagree and affirm.

---

[1]Although appellees both testified that they were served with notice of the California lawsuit and that they forwarded some sort of response to the California court, the judgment recites that a default judgment was rendered, stating that the appellees "failed to appear and answer the complaint of Plaintiff within the time allowed by law."

The record discloses that the parties entered into a lease agreement in 1987, whereby appellees leased a commercial dishwasher for use in their restaurant. As pertinent here, the agreement provided that the lease would not be effective until countersigned by the authorized Leasco signatory, and that it would be governed by the laws of California. The lease did not contain a forum selection clause. Apparently, appellees defaulted in their payments after which appellant obtained the judgment in California for the principal sum of $4,208.79.

■■ The Uniform Enforcement of Foreign Judgments Act, found at Ark. Code Ann. § 16-66-602 to -608 (Supp. 1991), provides a summary procedure in which a party in whose favor a judgment has been rendered may enforce that judgment promptly in any jurisdiction where the judgment debtor can be found, thereby enabling the judgment creditor to obtain relief in an expeditious manner. *Butler Fence Co.* v. *Acme Fence & Iron*, 42 Ark. App. 30, 852 S.W.2d 826 (1993). The Uniform Act requires only that the foreign judgment be regular on its face and duly authenticated to be subject to registration. *Strick Lease, Inc.* v. *Juels*, 30 Ark. App. 15, 780 S.W.2d 594 (1989). Under the Full Faith and Credit Clause of the United States Constitution, art. IV, § 1, a foreign judgment is as conclusive on collateral attack as a domestic judgment would be, except for the defenses of fraud in the procurement or want of jurisdiction in the rendering court. *McDermott* v. *Great Plains Equipment Leasing Corp.*, 40 Ark. App. 8, 839 S.W.2d 547 (1992). These judgments are presumed valid; an answer asserting lack of jurisdiction is not evidence of the fact and the burden of proving it is on the one attacking the foreign judgment. *Butler Fence Co.* v. *Acme Fence & Iron Co.*, *supra.*

■■ California Code of Civil Procedure A. § 410.10 (1991) provides that "[a] court of [California] may exercise jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States." In order for a valid judgment to be rendered against a non-resident not served within the forum state, due process requires that certain minimum contacts exist between the non-resident and the state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Akin* v. *First National Bank of Conway*, 25 Ark. App. 341, 758 S.W.2d 14 (1988), *citing Interna-*

*tional Shoe Co.* v. *Washington,* 326 U.S. 310 (1945). For the exercise of jurisdiction to be proper, the contacts with the forum state must be such that the non-resident defendants should reasonably anticipate being "haled" into the foreign court. *See World-Wide Volkswagen Corp.* v. *Woodson,* 444 U.S. 286 (1980). A single contract can provide the basis for the exercise of jurisdiction over a non-resident defendant, if there is a substantial connection between the contract and the forum state. *McGee* v. *International Life Insurance Co.,* 355 U.S. 220 (1957). However, whether the "minimum contacts" requirement has been satisfied is a question of fact, which is to be decided on a case-by-case basis. *Moran* v. *Bombardier Credit, Inc.,* 39 Ark. App. 122, 839 S.W.2d 538 (1992); *Meachum* v. *Worthen Bank & Trust Co.,* 13 Ark. App. 229, 682 S.W.2d 763 (1985). There is no exact formula for what is reasonable and fair under the circumstances. *Jagitsch* v. *Commander Aviation Corp.,* 9 Ark. App. 159, 655 S.W.2d 468 (1983).

In her testimony, appellee Judith Ellison related the circumstances surrounding the lease of the dishwasher. She said that the dishwasher which was first used in the restaurant did not work properly, and that the salesperson for Sysco Food Services in Little Rock, which supplied food for the restaurant, suggested that "they" could lease a dishwasher to them. She testified that all conversations about leasing the equipment took place in the restaurant with the salesperson from Sysco, and that she never communicated with anyone from California. She said that the lease was signed in the restaurant. Ms. Ellison further testified that she gave the downpayment of $247 to the salesperson, but that she mailed thirteen payments to appellant at a California address. She stated that she was not told that the lease had to be approved by appellant, and she did not recall the provision in the agreement stating that the lease would not become effective until counter-signed by a Leasco signatory. When cross-examined on that point, she related that "we went through Sysco," and she said that they bought chemical products from Sysco "to keep the dishwasher going."

Appellee Jessie Rowe gave similar testimony as that of Ms. Ellison. She also maintained that she had no communications with anyone about the dishwasher outside of Garland County. Ms. Rowe added that the dishwasher was delivered by the sales-

person from Sysco and that the salesperson was required to fix it because it did not work.

■ In the case at bar, it is clear that the appellees had no direct communications with anyone from appellant-corporation in California. Instead, appellees dealt solely with a person from a concern out of Little Rock, and it was this person who presented them with the lease, which they signed in their local restaurant. Although the lease did require the counter-signature of someone from the appellant-corporation, and payments were forwarded to appellant in California, we cannot disagree with the trial court's conclusion that the appellees could not have reasonably anticipated being subjected to a lawsuit in California on the basis of those contacts alone. Nor do we believe that the provision stating that California law would govern mandates a contrary conclusion when the circumstances surrounding the transaction are considered as a whole. We hold that, under these facts, the appellees' contacts with California were of insufficient quantity and quality to satisfy the requirements of due process. Accordingly, we affirm the trial court's dismissal of the petition.

The dissent would reverse this case on the basis of our decision in *Meachum* v. *Worthen Bank & Trust Co., supra.* There, we upheld the trial court's exercise of personal jurisdiction over a non-resident defendant under our long-arm statute, based on entirely different circumstances than those present here. In *Meachum*, the non-resident defendant had guaranteed a debt in Arkansas and had sent his financial statement in support of the guaranty to the Arkansas lender. Further, the non-resident defendant was heavily involved with the corporation which had not only transacted business with the Arkansas debtor-corporation, but which was also responsible for the formation of the Arkansas corporation. The non-resident defendant had even personally drafted the Arkansas corporation's articles of incorporation and had mailed them to Arkansas for filing. Under those circumstances, we concluded that the non-resident defendant had "transacted business" in the State of Arkansas, that the contract he was a party to had a substantial connection with the State of Arkansas and that the non-resident defendant could have reasonably anticipated being haled into the courts of Arkansas in light of those contacts with this State. In *Meachum*, we also recognized that cases of this kind are dependent on their own facts and that each

case is to be decided on a case-by-case basis. The facts in this case are distinguishable from those in *Meachum*, and we are of the view that the decision in that case and its rationale, while illustrative, do not warrant the reversal of the case at hand.

Affirmed.

PITTMAN, J., concurs.

MAYFIELD, J., dissents.

MELVIN MAYFIELD, Judge, dissenting. I cannot agree with the result reached by the majority opinion in this case. I would reverse this case and allow the California judgment to be registered in Arkansas under the rationale of *Meachum* v. *Worthen Bank & Trust Co.*, 13 Ark. App. 229, 682 S.W.2d 763 (1985). In that case the trial court had found Meachum liable as guarantor of a lease agreement between Telecompo of Arkansas and appellee Worthen Bank & Trust Company. Appellant Meachum was a Dallas, Texas, attorney, and an officer, director, and general counsel of Composition Management Company (CMC), a computerized typesetting Texas corporation with its principal place of business in Dallas, and a network of outlying stations which fed data to CMC. CMC supplied part of the financing to set up a company, Telecompo of Arkansas, in Conway, Arkansas. CMC then purchased two computers and related equipment and sold them to Worthen Bank, whose leasing agent, First Arkansas Leasing Corporation (FALCO), leased them to Telecompo. Before purchasing and leasing the equipment, Worthen Bank required several guarantors, including the individual guaranty of Meachum. Meachum sent his financial statement to Worthen and signed the lease guaranty in Dallas as an individual and as an officer for CMC.

Telecompo defaulted on the lease agreement, appellee repossessed the equipment, sold it and instituted in an Arkansas Circuit Court an action on the lease agreement against each of the individual guarantors. The trial court found jurisdiction over Meachum based on our long-arm statute, then Ark. Stat. Ann. § 27-2502 (Repl. 1979), now Ark. Code Ann. § 16-4-101 (1987), which provides that a trial court may exercise personal jurisdiction over a person as to a cause of action "arising from the person's . . . transacting any business in this State. . . ."

Meachum argued on appeal that he had not transacted any business in this State. This court held that the lease agreement which Meachum had guaranteed clearly had a substantial connection with Arkansas based on the five factors outlined by the Eighth Circuit Court of Appeals in *Aftanese* v. *Economy Baler Co.*, 343 F.2d 187 (8th Cir. 1965). Those factors are (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience to the parties. In holding Meachum liable on the guaranty we held that his contacts may have been few but they were substantial in nature and quality.

In the instant case, in my opinion, the appellees' contacts with the State of California were as substantial in nature and quality, even though they were transacted through appellant's Little Rock agent, as were those of the appellant in *Meachum.*

Stripped to the essentials, the situation that gave Arkansas personal jurisdiction over Meachum in Texas was that he had agreed to pay a debt due to a creditor in Arkansas. Based on that precedent, I see no reason why California should not have personal jurisdiction over the appellees in Arkansas who have agreed to pay a debt due to a creditor in California. Therefore, I think the trial court should have allowed registration of the foreign judgment in the instant case. It seems to me that the law should be consistent when based on facts not substantially different.